[No. 43954. En Banc. September 2, 1976.]

THE CITY OF SPOKANE, ET AL, *Appellants,* v. SPOKANE
POLICE GUILD, ET AL, *Respondents.*

458

*Charles S. Dorn,* for appellants.

*Dellwo, Rudolf & Schroeder,* by *Richard J. Schroeder,* for respondent Spokane Police Guild, et al.

*Slade Gorton, Attorney General,* and *Gomer L. Cannon* and *Robert G. Swenson, Assistants,* for respondent State.

Horowitz, J.—The plaintiff City of Spokane (hereinafter referred to as Spokane) appeals a declaratory judgment of the Superior Court for Spokane County, holding constitutional RCW 41.56, providing for compulsory arbitration of labor disputes between uniformed personnel and employers. Defendants Spokane Police Guild (hereinafter referred to as Guild) and Local No. 29, International Associa-

tion of Fire Fighters, AFL-CIO (hereinafter referred to as Fire Fighters), cross-appeal the portion of the judgment holding that the arbitration timetable in RCW 41.56.450 is mandatory. We uphold the constitutionality of RCW 41.56, and hold the arbitration timetable in RCW 41.56.450 to be directory.

The controlling facts are as next stated. Spokane has a fiscal year beginning January 1 and ending December 31. On November 1, 1974, a budget message was submitted to the Spokane City Council for fiscal year 1975. The council adopted a 1975 budget on December 30, 1974.

The Guild is the certified exclusive bargaining representative for all members of the Spokane Police Department of the rank of sergeant and below. The Fire Fighters is the certified exclusive bargaining representative for all members of the Spokane Fire Department below the rank of Deputy Fire Marshal.

May 1, 1974, the Guild requested by letter to Spokane that negotiations on wages, hours, and working conditions begin in accordance with RCW 41.56. The negotiations began May 14, 1974. On August 6, 1974, the Guild notified Spokane that the parties were at an impasse and the Guild intended to request mediation from the state mediation service of the Department of Labor and Industries. RCW 41.56.440.

Mediation began August 16, 1974. It did not prove fruitful. August 28, 1974, the Guild notified Spokane that in accordance with RCW 41.56.440 the parties now had the duty to appoint a fact-finding panel. The panel was formed and held its first hearing September 27, 1974. After further hearings and meetings, the chairman of the panel on November 4, 1974, requested of the other two members of the panel, representing the Guild and Spokane, that he be allowed until November 25, 1974, to complete his fact-finding report. He gave as reasons for the requested extension the illness of his secretary and the abnormally large record of the proceedings. The other two members agreed to this extension. November 19, 1974, the chairman requested a

second delay until December 2, 1974. The reason given was continuing secretarial problems. The second extension was also agreed to by the other two panel members. The report was issued to the Guild and Spokane on December 23, 1974.

Spokane declined to follow the suggestions in the report. Consequently, on December 27, 1974, the Guild informed the Department of Labor and Industries that in accordance with RCW 41.56.450, the Guild was instituting the formation of an arbitration panel. The Guild submitted three names for consideration as its representative on the panel.

Spokane did not submit its three names. On January 24, 1975, it began this declaratory judgment action against the Guild and Fire Fighters. Its complaint alleges that sufficient funds are not available in the 1975 budget to pay for either the wage increase and benefits demanded by the Guild, or the wage increase recommended by the fact-finding panel. The claims of Spokane relevant to this appeal are (1) since arbitration was not completed before submission of the budget to the city council, as required by the timetable of RCW 41.56, Spokane is not required to proceed with arbitration, and (2) RCW 41.56 violates several provisions of the state constitution.

By answer and counterclaim, the Guild asked for an order declaring RCW 41.56.450-.470 constitutional, directing Spokane to submit three names for its representative on the arbitration panel, and declaring the timetable of RCW 41.56.450 procedural, directive, and waivable by the parties.

The Attorney General was served and appeared. Trial was had before the court. In its conclusions of law the trial court held (1) RCW 41.56.400-.470 constitutional in all respects, (2) these statutory provisions were adopted as an alternative to the basic right of all citizens to strike, and (3) the time requirements of RCW 41.56.440-.450 are mandatory, and the failure of the parties to comply with them made inapplicable to their 1975 contract the provisions for arbitration in RCW 41.56.450.

Spokane appealed and the Guild cross-appealed to the Court of Appeals. The issues on appeal have been stipu-

lated by the parties to be limited to (1) whether RCW 41.56.450 is constitutional, and (2) whether the timetable in RCW 41.56.450 is mandatory or waivable by the parties. This court accepted certification of the appeal October 3, 1975.

We turn now to the two issues presented, as stipulated by the parties. Spokane relies on three provisions of our constitution to support its contention that RCW 41.56.450 is unconstitutional. RCW 41.56.450 provides that if no agreement is reached between employer and uniformed personnel 45 days after mediation and fact-finding begin, an arbitration panel shall be created. The statute provides the panel is deemed an agency of the Director of the Department of Labor and Industries, and a State agency. The decision of the arbitration panel is made final and binding, subject only to superior court review upon the question of whether the panel's decision was arbitrary and capricious. RCW 41.56.450 and .480.

Spokane first relies upon Const. art. 11, § 12, which states the legislature has no power to tax cities for municipal purposes. Spokane contends that since RCW 41.56.450 will have the effect of imposing additional expenses upon it in the form of increased wages for uniformed personnel, the section violates this constitutional provision.

█ We cannot agree. First, RCW 41.56.450 does not impose a tax. *State ex rel. Nettleton v. Case*, 39 Wash. 177, 182, 81 P. 554 (1905), states:

> Taxes are defined to be "burdens or charges imposed by legislative authority on persons or property, to raise money for public purposes, or, more briefly, 'an imposition for the supply of the public treasury.' "

RCW 41.56.450, although it may result in the need for local taxation, does not itself impose any "burden or charge." *Amsterdam v. Helsby*, 37 N.Y.2d 19, 332 N.E. 2d 290, 302, 371 N.Y.S.2d 404 (1975) (Fuchsberg, J., concurring).

In addition, if the primary purpose of legislation is regulation rather than raising revenue, the legislation cannot be classified as a tax even if a burden or charge is imposed.

*Rodgers v. United States*, 138 F.2d 992, 994 (6th Cir. 1943); *Scott v. Donnelly*, 133 N.W.2d 418, 423 (N.D. 1965); *Starker v. Scott*, 183 Ore. 10, 15-16, 190 P.2d 532 (1948); *State v. Jackman*, 60 Wis. 2d 700, 707-08, 211 N.W.2d 480 (1973). The primary purpose of RCW 41.56 is clearly regulatory. RCW 41.56.430 states:

> The intent and purpose of this 1973 amendatory act is to recognize that there exists a public policy in the state of Washington against strikes by uniformed personnel as a means of settling their labor disputes; that the uninterrupted and dedicated service of these classes of employees is vital to the welfare and public safety of the state of Washington; that to promote such dedicated and uninterrupted public service there should exist an effective and adequate alternative means of settling disputes.

Again, therefore, the statute does not impose a tax.

 In addition, for a tax to be in violation of Const. art. 11, § 12, it must be imposed for "municipal purposes." If the legislative purpose is "to obtain performance of duties promoting the general welfare and security of the state," the constitutional prohibition is inapplicable. 16 E. McQuillin, *Municipal Corporations* 52 (1972); *accord, State ex rel. Clausen v. Burr*, 65 Wash. 524, 118 P. 639 (1911). It is readily apparent that strikes by police and firefighters for any reason, which place public health and safety in immediate danger, are a matter which concerns the state at large and not merely a particular municipality. *See* RCW 41.56.430. Such a strike in Spokane might, for example, necessitate the use of the state militia or state patrol to do the police work, or the use of firefighters from neighboring areas to put out fires in Spokane. RCW 43.06.270. As stated in *State ex rel. Clausen v. Burr, supra* at 529, "the preservation of the public peace and the like, although confided to local agencies, are essentially matters of public conern . . . ." Even if RCW 41.56.450 is treated as if it imposed a tax, it would nevertheless not be within the terms of the constitutional provision for this second reason.

Spokane next contends RCW 41.56.450 violates Const. art. 7, § 1 (amendment 14), which states: "The power of taxa-

tion shall never be suspended, surrendered or contracted away." We disagree for the reason already mentioned, that RCW 41.56.450 does not impose a tax.

Lastly, Spokane contends RCW 41.56.450 is an unconstitutional delegation of legislative power in violation of Const. art 2, § 1, as amended. Again we cannot agree. This court has recently stated the test to be used to determine the validity of a delegation of legislative power is the following:

> We hold that the delegation of legislative power is justified and constitutional, and the requirements of the standards doctrine are satisfied, when it can be shown (1) that the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power.

*Barry & Barry, Inc. v. Department of Motor Vehicles*, 81 Wn.2d 155, 159, 500 P.2d 540 (1972). The two requirements of the above test are met by RCW 41.56.450. The composition and duties of the arbitration panel are set out in detail in RCW 41.56.450, and explicit standards and guidelines for its decision are set forth in RCW 41.56.460. Secondly, procedural safeguards are provided for in RCW 41.56.450 in the form of superior court review of the decision of the arbitration panel upon the question of whether its decision was arbitrary or capricious. *See also* RCW 41.56.480.

Upon similar reasoning, compulsory arbitration statutes in other states have been held to be constitutional delegations of legislative power. *Amsterdam v. Helsby*, 37 N.Y.2d 19, 332 N.E.2d 290, 293, 371 N.Y.S.2d 404 (1975) (police and fire); *Harney v. Russo*, 435 Pa. 183, 189-90, 255 A.2d 560 (1969) (police and fire); *Warwick v. Warwick Regular Firemen's Ass'n*, 106 R.I. 109, 256 A.2d 206 (1969) (firefighters); *see Fairview Hosp. Ass'n v. Public Bldg. Serv. & Hosp. & Institutional Employees, Local 113*, 241 Minn. 523, 544-47, 64 N.W.2d 16 (1954) (charitable hospital employees).

 *State ex rel. Everett Fire Fighters, Local 350 v. Johnson*, 46 Wn.2d 114, 278 P.2d 662 (1955), relied upon by Spokane is not controlling. *Everett Fire Fighters* held an amendment to the Everett city charter, providing for arbitration of disputes between the firemen and the city, to be an unlawful delegation to the arbitrators of the authority vested by RCW 35.22.200 in the mayor and city council to fix wages of municipal employees. *State ex rel. Everett Fire Fighters, Local 350 v. Johnson*, however, was decided prior to the enactment in 1973 of the Public Employees' Collective Bargaining Act (RCW 41.56), the constitutionality of which we uphold. The legislature in that act not only made such a delegation lawful and mandatory[1] by enactment of this law, but provided in RCW 41.56.905 that the provisions of the act "shall control" in case of conflict with "any other statute, ordinance, rule or regulation of any public employer as it relates to uniformed employees . . ." This language would necessarily include RCW 35.22.200. The conflict present in *State ex rel. Everett Fire Fighters, Local 350 v. Johnson*, has, therefore, been eliminated by RCW 41.56, and what was held unlawful in that case is now both lawful and mandatory.

 The second question stipulated by the parties is whether the timetable in RCW 41.56.450 for the conduct of arbitration is mandatory or waivable by the parties. We hold the timetable deadlines are directory rather than mandatory. Accordingly, the parties may waive strict compliance with a timetable deadline for good cause.[2]

We first note the familiar rule of statutory construction that legislation should be construed to make it purposeful and effective. *Mason v. Bitton*, 85 Wn.2d 321, 326, 534 P.2d 1360 (1975). The mandatory deadline construction urged by Spokane and adopted by the trial court would severely hamper the effectiveness of the statute. If the complex

---

[1] Charter cities are, by express language of Const. art. 11, § 10 (amendment 40), subject to the general laws of this state.

[2] We leave open the question not presented whether a party is entitled to a delay in meeting a particular timetable requirement in RCW 41.56.450 in the absence of consent by the opposing party.

mediation, fact-finding and arbitration procedure must be abandoned once begun because of unavoidable delay during one step of the process, it will rarely if ever serve its purpose. Certain delays are inevitable in this procedure and must be allowed.

Permitting a timetable deadline to be avoided for good cause will not result in an unwilling party to arbitration avoiding the procedure altogether. RCW 41.56.480 permits either party to seek an appropriate order from the superior court if the other party refuses to submit to fact-finding or arbitration. This section will prevent unwarranted delay from unduly hampering the effectiveness of the statutory procedure. In addition, the fact the legislature inserted RCW 41.56.480 in the arbitration scheme, which would it-self cause a delay in the timetable if invoked, suggests the timetable is directory and not mandatory.

Spokane argues the legislature's use of the word "shall" in connection with each timetable deadline requires the deadlines to be mandatory. This is not always so. The word "shall" in a statute may be construed as directory rather than mandatory depending upon legislative intent. *Seattle v. Reed*, 6 Wn.2d 186, 188, 107 P.2d 239 (1940); *Spokane County ex rel. Sullivan v. Glover*, 2 Wn.2d 162, 169, 97 P.2d 628 (1940).

Spokane also argues that delays in the arbitration timetable in the instant case prevented the wage dispute from being resolved before the Spokane budget was ap-proved by the council, which budget did not contain monies for wage increases which could result from later arbitra-tion.

Spokane might have utilized the power conferred by RCW 35.33.145 to establish a contingency fund to meet salary increases "which could not have been foreseen or reasonably evaluated at the time of adopting the annual budget, or from which to provide moneys for those emer-gencies described in RCW 35.33.081 and 35.33.091."

In the alternative, if the expense of salary increases awarded by arbitration under RCW 41.56.450 is not reason-

ably foreseeable at the time of filing a preliminary budget, RCW 35.33.091 (emergency expenditures) permits the council to appropriate money for this purpose. *See State ex rel. Porter v. Superior Court,* 145 Wash. 551, 261 P. 90 (1927). To be reasonably foreseeable, the certainty or the amount of the increase must be anticipated beyond a mere possibility in the exercise of sound judgment. Accordingly, in the instant case, whether or not a salary increase would be awarded by the arbitration panel, and if so, the amount could not have been reasonably foreseen by Spokane prior to the adoption of the budget.

Establishment of a contingency fund under RCW 35.33.145 is not a prerequisite to the use of RCW 35.33.091 for these reasons: (1) neither statute makes such a requirement, and (2) the necessity for continuing the vital functions of government weighs against our implying such a requirement.

The remaining issue is the proper relief to be granted to defendants. The Guild by counterclaim asked that Spokane be ordered to submit three names for its arbitration representative as required by RCW 41.56.450. We hold the trial court erred in not entering this order. RCW 41.56.450 is constitutional, and Spokane has not disputed the validity of its consent to two of the longest delays to date in the procedures of RCW 41.56. Therefore, Spokane remains under a duty to submit the wage dispute on the 1975 contract between itself and the Guild to the arbitration procedures of RCW 41.56.450. In an action for declaratory relief under the Uniform Declaratory Judgments Act, enacted in Washington as RCW 7.24, the defendant may by counterclaim secure appropriate coercive relief. RCW 7.24.010 and .080; *Gray v. Defa,* 103 Utah 339, 349, 135 P.2d 251, 155 A.L.R. 495 (1943); Annot., 155 A.L.R. 501, 507 (1945).

We therefore hold for defendants on both stipulated issues, and remand for entry of the above-stated order requested by the Guild.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and DOLLIVER, JJ., concur.